WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) |
| v. | ) CR 08-212 TUC DCB (BPV) |
| Richard G. Renzi, James W. Sandlin, and Dwayne Lequire, | ) **O R D E R** |
| Defendants, | ) |

The Court rejects the Magistrate Judge's Report and Recommendation (R&R) to dismiss the honest service counts under *Skilling v. United States*, 130 S.Ct. 2896 (2010), and to find the motion to dismiss counts 6 and 7 as moot.

STANDARD OF REVIEW: Report and Recommendation

The duties of the district court in connection with a R&R are set forth in Rule 59 of the Federal Rules of Criminal Procedure and 28 U.S.C.A. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Crim. P. 59(b)(3); 28 U.S.C.A. § 636(b)(1). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C.A. § 636(b); *see also* Fed. R. Crim. P. 59(b)(3).

Where the parties object to a R&R, "[a] judge of the [district] court shall make a *de novo* determination of those portions of the [R&R] to which objection is made." *Thomas v. Arn,* 474 U.S. 140, 149-50 (1985) (quoting 28 U.S.C.A. § 636(b)(1)(C));. When no objection is filed, the district court need not review the R&R *de novo*. *Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121-22

(9th Cir. 2003) (en banc). Therefore, to the extent that no objection has been made, arguments to the contrary have been waived. *McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980) (failure to object to Magistrate's report waives right to do so on appeal); *see also*, Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974) (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation)).

The Court has considered the Objections filed by the parties, the Responses and the Government's Reply, and the parties' briefs considered by the Magistrate Judge. The matters contained in the R&R are fully briefed and ready for disposition by the Court.

## MAGISTRATE JUDGE'S RECOMMENDATION

On October 27, 2011, Magistrate Judge Bernardo P. Velasco issued the R&R. (Doc. 913.) The Magistrate Judge found that, as a matter of law, *Skilling* requires dismissal of the honest service wire fraud counts because the Government charged Renzi with undisclosed self-dealing and not with taking a bribe or kickback. The Magistrate Judge's recommendation hinged on allegations in the Second Superseding Indictment (SSI) that Renzi concealed Sandlin's debt to Renzi from the land-exchange proponents. The Magistrate Judge reasoned that this allegation brought the charges within an "amorphous category of cases" rejected by the Supreme Court in *Skilling* as unconstitutionally vague: undisclosed self-dealing. After *Skilling*, 18 U.S.C.A. § 1346 criminalizes only "fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." *Skilling*, 130 S. Ct. At 2904. The Magistrate Judge recommended dismissing the honest service counts 1 through 10. Consequently, he recommended the Court find the Motion to Dismiss Counts 6 and 7 to be moot.

The Magistrate Judge considered *Skilling*, which was issued by the Supreme Court subsequent to the parties briefing the Motion to Dismiss the Honest Service Charges. By their objections to the R&R, the parties have presented their positions as to whether *Skilling* requires the Court to grant the Motion to Dismiss the Honest Service Charges.

The Government objects to the R&R as a misreading of *Skilling* and as being inconsistent with the Ninth Circuit's ruling denying Defendant Renzi's Speech or Debate Clause arguments on appeal. The Government argues the R&R conflicts with earlier rulings by this Court explicitly finding that the SSI sufficiently charged the bribery prong of honest services fraud. *See* (Doc. 324: Order Re: Motion to Strike Surplusage at 4-5.)

In addition to urging the Court to adopt the R&R and dismiss the honest service charges, Defendant Renzi argues that *Skilling* also requires the Court to dismiss the Racketeering Acts 1A and 2C.

The racketeering count, predicate act 2, Scheme to Deprive the United States of Honest Services, and to Extort Constituents, alleges that between January 2005 and February 2006, Renzi devised, attempted to devise, and intended to devise a scheme and artifice to defraud the United States of its intangible right to honest services. Subpredicate act 2C realleges the substantive honest services fraud offenses and alleges use of interstate wires on September 27, 2005 (count 8), to transmit payout instructions for $533,000 to Patriot Insurance Agency from Texas to Arizona. Because subpredicate 2C realleges the honest services wire fraud count 8, it rises or falls on *Skilling*.

The racketeering count, predicate act 1, Use of Insurance Premiums Held in Trust to Fund First Congressional Campaign, alleges that between December 2001 and June 2003, Defendant Renzi devised, attempted to devise, and intended to devise a scheme and artifice to defraud by misappropriating insurance premiums held in trust by Renzi and Company and diverted those funds to his own benefit and that of his congressional campaign. Subpredicate act 1A charges that on January 24, 2002, Renzi used the interstate wires for the purpose of executing this scheme by filing an FEC Form 3 by wire, containing the false statement that the money Renzi embezzled from insureds was instead a loan of his personal money to the campaign.

Defendant Renzi's assertion that subpredicate 1A is an honest service count is based on the subpredicate count's reliance on 18 U.S.C.A. § 1346, which broadens the reach of the wire fraud statute to include a scheme or artifice to deprive another of the intangible right of

honest services. However, subpredicate 1A also alleges a violation of 18 U.S.C.A. § 1343 for filing a form with the Federal Election Commission falsely reporting funds received for his first congressional campaign were loans rather than embezzled insurance premiums. Subpredicate 1A can stand alone as a "money and property" wire fraud charge even if it fails under *Skilling*.

At the time Renzi filed his objection, the appeal was still pending and he objected to this Court's exercising jurisdiction over the case pending disposition of his appeal.

Subsequently, the Ninth Circuit Court of Appeals has resolved the appeal by affirming the Court's rulings regarding the Speech or Debate Clause, but reversed the Court's dismissal of the RICO Act, predicate count 2 (honest services allegations), and remanded the RICO charges for trial. The Mandate issued on January 19, 2012, returning jurisdiction to this Court, made Renzi's jurisdictional challenge moot. Because the Court rejects the R&R regarding *Skilling*, the Court rejects Renzi's assertion to dismiss the Racketeering Act, subpredicate Acts 1A and 2C under *Skilling*.

Defendant Sandlin objected only to the conclusion in the R&R that the Motion to Dismiss the wire fraud charges based on loan proceeds is moot. Because the Court does not adopt the R&R in respect to *Skilling*, the Motion to Dismiss Wire Fraud Charges Based on Loan Proceeds (Counts 6 and 7) is not moot.

## OBJECTIONS

### A. *Skilling v. United States*, 130 S. Ct. 2896 (2010)

The Government alleges ten counts against Renzi for using wires to commit fraud that deprived the United States of its "intangible right" to his "honest services," in violation of 18 U.S.C.A. §§ 1343 and 1346. (Doc. 466, ¶¶ 15, 27).

Section 1343 makes it illegal to devise or intend to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and transmit or cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

Section 1346 defines the fraud prohibited by § 1343 to include conduct which deprives another of the "intangible right of honest services."

Congress enacted section 1346 in response to judicial decisions limiting the honest-services theory of fraud to fraud against tangible property interests, not the intangible right of the citizenry to good government. (R&R at 4-5) (citing *Skilling*'s discussion of case law since 1941 and *McNally v. United States*, 107 S. Ct. 2875, 2879 (1987)). In *Skilling*, the Supreme Court addressed the scope and constitutionality of the honest-services statute and made an effort to add clarity to the honest-services wire fraud doctrine.

*Skilling* involved a former corporate executive accused of participating in a scheme to deceive the public and shareholders about his company's performance in order to prop up its stock value. *Skilling,* 130 S.Ct. at 2907. The government in *Skilling* charged, among other things, that an object of the scheme was to deny the company and its shareholders their rights to the executive's honest services, in derogation of 18 U.S.C.A. § 1346. *Id*. at 2908.

To preserve the statute without transgressing constitutional limitations of due process for being unconstitutionally vague, the Supreme Court limited section 1346 to criminalizing only "'fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party *who had not been deceived*.'" (R&R at 6 (quoting *Skilling* at 2928–29,2931, 1232)). The Supreme Court expressly rejected the government's argument that § 1346 should also encompass "undisclosed self-dealing by a public official or private employee— *i.e.*, the taking of official action by the employee [or official] that furthers his own undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty." *Skilling*, 130 S. Ct. at 2932. Under *Skilling*, allegations of undisclosed self-dealing do not support a violation of Section 1346.

The Supreme Court instructed that the prohibition on bribes and kickbacks draws content not only from pre- *McNally* case law, but also from federal statutes proscribing—and defining—similar crimes. *See, e.g.*,18 U.S.C.A. §§ 201(b), 666(a)(2); 41 U.S.C.A. § 52(2), *now* 41 U.S.C.A. § 8701(s). (R&R at 6) (citing *Skilling*, 130 S. Ct. at 2933). It is undisputed that the SSI against Renzi, having issued before *Skilling*, charged

- 5 -

him with undisclosed self-dealing. Accordingly, the honest service charges against Renzi "encompass conduct more wide-ranging than the paradigmatic cases of bribes and kickbacks." *Skilling*, 130 S.Ct. at 2932. The Magistrate Judge, therefore, got it right when he held: "The indictment alleges undisclosed self-dealing– an area the Supreme Court has instructed falls outside the reach of § 1346." (R&R at 9.) The Magistrate Judge erred, however, in ending the inquiry without asking whether, in addition to undisclosed self-dealing, the SSI charge a paradigmatic case of bribery or kickbacks.

### B. *Skilling*: Paradigmatic Cases of Bribery and Kickbacks

As noted by the Magistrate Judge: "The Ninth Circuit recently narrowly construed the term 'kickback' in the context of an honest-services charge as involving a '*return* of a portion of a monetary sum received, [especially] as a result of coercion or a secret agreement.'" (R&R at 6) (quoting *United States v. Pelisamen*, 641 F.3d 399, 405 (9th Cir.2011) (*emphasis in original*) (finding the "paradigmatic kickback" as defined by 41 U.S.C.A. § 52(2), now 41 U.S.C.A. § 8701(2) is made for the purpose of improperly obtaining or rewarding favorable treatment in some area (*e.g.*, government contracts).

"The Ninth Circuit also recently addressed a challenge to an honest-services conviction in the context of bribery, and found the evidence demonstrated the requisite *quid pro quo* was satisfied by 'a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor.'"(R&R at 6-7) (quoting *United States v. Wilkes*, --- F.3d ---, 2011 WL 495370 *16 (9th Cir. 2011)).

The Magistrate Judge concluded that the conduct charged in the SSI was neither a paradigmatic case of bribery nor a kickback because Renzi did not obtain the benefit from the scheme from a third party, *who had not been deceived.* In fact, the SSI expressly alleges that "Sandlin and Renzi *concealed* Sandlin's debt to Renzi" from both land exchange proponents. (R&R at 7.) The Magistrate Judge concluded these allegations in the SSI defeat the honest services charges by making this case "fall squarely into that 'amorphous category of cases' rejected . . . as unconstitutionally vague: 'undisclosed self-dealing,' i.e., actions that further a party's own undisclosed financial interests 'while purporting to act in

- 6 -

the interests of those to whom [one] owes a fiduciary duty.'" (R&R at 8) (quoting *Skilling*, 130 S. Ct. at 2932)).

The Government alleged a claim of *quid pro quo* bribery when it charged that Renzi told land exchange proponents, "No Sandlin property, no bill." He also promised to give the land exchange legislation a "free pass" through the House of Representatives Natural Resource Committee. SSI 25(i)-(k)**,** *see also* (Doc. 324: Order Re: Motion to Strike Surplusage at 4-5 (finding that the Superseding Indictment ¶ 28(i-k), now the SSI ¶ 25(i-k) tracks the two core categories of official misconduct for honest services mail and wire fraud: 1) taking a bribe or otherwise being paid for a decision while purporting to be exercising independent discretion and 2) nondislosure of material information). Accordingly, the Government has charged Renzi with directly soliciting and taking a bribe in exchange for his promise to land exchange proponents that they would receive favorable legislative treatment if they purchased the Sandlin property. Under *Skilling*, however, the benefit from the fraudulent scheme must flow to Renzi from a third party who has not been deceived. Otherwise, the case is nothing more than undisclosed self dealing.

It is helpful to note what a paradigmatic self-dealing case looks like. *Skilling* is a good example. The government alleged that Skilling defrauded Enron shareholders by misrepresenting the company's fiscal health, which artificially inflated its stock price, thereby enabling him to profit from this fraudulent scheme . . . through the receipt of salary and bonuses, . . . and through the sale of approximately $200 million in Enron stock. The government did not charge Skilling with soliciting or accepting side payments from any third party in exchange for making these misrepresentations. The government's charges against Skilling were limited to conduct that furthered his own undisclosed financial interests while he purported to act in the interests of those to whom he owed a fiduciary duty. There was nothing more.

Here, the Government has alleged that Renzi acted to further his own undisclosed financial interests in the sale of the Sandlin property, while purporting to act in the interests of those to whom he owed his honest services. (R&R at 2-3) (citing SSI ¶¶ 28-30). But, the

Government charges more: Renzi solicited a bribe from the land exchange proponents when he compelled them to purchase the Sandlin property in exchange for his promise to promote favorable land exchange legislation. (R&R at 2-3) (citing SSI at ¶¶ 25j-o). The Court does not agree with the Magistrate Judge's conclusion that because the SSI charges that Renzi concealed his interest in the Sandlin property from the land exchange proponents, the honest service claim must fail. Unlike a paradigmatic self-dealing case, such as *Skilling*, where there is nothing more than an undisclosed financial interest, here, the SSI alleges that Renzi had a secret agreement with Sandlin for Sandlin to pay Renzi $700,000 if Renzi secured the sale of the Sandlin property by the land exchange proponents. Without this secret "kickback" agreement between Sandlin and Renzi, the sale of the Sandlin property would not necessarily have resulted in Renzi being repaid the money owed him by Sandlin. Renzi did not own an interest in the Sandlin property nor was Sandlin's debt secured by the property.

The Court believes its application of *Skilling* is consistent with the Ninth Circuit's discussion of bribery in this case and its finding that the extortion charges against Renzi are a distinction without a difference. *United States v. Renzi*, 651 F.3d 1012, 1024 (9th Cir. 2011). Even though the charges against Defendant Renzi are for extortion, the court held to the Speech or Debate Clause principles outlined by the Supreme Court in *United States v. Brewster,* 408 U.S. 501 (1972), where taking a bribe was found to "obviously" be not part of the legislative process or function. The appellate court refused to allow Defendant Renzi to rely "on the fact that, as charged, his deceit was more refined, more sophisticated, than Brewster's. Rather than selling his office for cash, he was wise enough to at least attempt to conceal his crime by using more indirect means of payment." *United States v. Renzi*, 651 F.3d 1012, 1024 (9th Cir. 2011). The Ninth Circuit confirmed that the factual allegations in the SSI supporting extortion are indistinguishable from a bribery charge. These same factual allegations support the honest service counts in the SSI. Compare SSI Count 1, ¶¶ 15-25 (Conspiracy to Commit Extortion and Wire Fraud), Counts 2-10, ¶¶ 1-14, 16-25, 26-30 (Honest Service Wire Fraud) and Counts 26-27, ¶¶ 1-14, 16-25, 47-50 (Extortion).

The Court does not believe its application of *Skilling* here stretches the honest service statute out of shape beyond the prohibition on bribes and kickbacks drawn by the Supreme Court from pre-McNally cases and federal statutes proscribing similar crimes. *Skilling*, 130 S. Ct. at 2933-34. The Supreme Court itself opened the door for the Court to consider a violation of honest service wire fraud based on 18 U.S.C.A.A. § 1951(a): Extortion. In *Skilling*, the Court relied on *United States v. Ganim*, 510 F.3d 134 (2nd Cir. 2007), where the court reviewed honest-services convictions involving bribery in light of elements of bribery under the substantive law of extortion, and *United States v. Kemp*, 500 F.3d 257, 280-81 (3rd Cir. 2007), where the indictment charged an honest service wire fraud conspiracy with substantive honest services wire fraud counts for false statements, money laundering, false tax returns, perjury, and extortion and attempted extortion. The third case relied on by the *Skilling* Court, *United States v. Whitefield,* 590 F.3d 325 (5th Cir. 2009) discussed the distinction between the illegal gratuity statute, which does not contain the limiting principle of *quid pro quo*, with both the extortion and bribery statutes, which both do require "an intent to perform an act in exchange for a benefit." *Id.* at 352, *see also*, *Evans v. United States*, 504 U.S. 255, 260 (1992) (describing extortion as being nearly identical to bribery from the perspective of the public official), *United States v. Kincaid-Chauncey*, 556 F.3d 923, 937 (9th Cir. 2009) (finding conviction for Hobbs Act extortion (extortion under color of official right) requires the government to prove *quid pro quo*).

The Court finds the honest service violations alleged in the SSI go beyond mere undisclosed self-dealing. The Government's extortion case against Renzi charges Renzi with soliciting a bribe from Company A and Investment Group B, which was paid to Sandlin, and alleges a secret kickback-agreement with Sandlin, who was not being deceived, to return a portion of the sale proceeds to Renzi. The Court finds the Government has alleged facts supporting a paradigmatic bribery and kickback case under *Skilling* and denies the Motion to Dismiss the Honest Service Counts.

/////

/////

### B. Dismissal of Wire Fraud Charges Based on Loan Proceeds (Counts 6&7)

Counts 6 and 7 involve wire transfers to Sandlin in Arizona from a husband and wife in Texas of their retirement funds held in New York to Arizona made as a personal loan to Sandlin, which was undisputably a legitimate loan secured by a portion of the Sandlin property retained by Sandlin and not sold to Investment Group B. Defendant Renzi[1] argues that counts 6 and 7 must be dismissed because the wire transmissions were not in furtherance of the alleged scheme to defraud. (Doc. 108: Motion to Dismiss Wire Fraud Charges Based on Loan Proceeds (Counts 6 & 7) (Motion to Dismiss Counts 6 and 7)).

Counts 2 through 10 allege honest service wire fraud violations of 18 U.S.C.A.. §§ 1343 and 1346 and § 2. The Government charges that between January 2005 and February 2006, Defendants Renzi and Sandlin aided and abetted one another, devised, attempted to devise, and intended to devise a scheme and artifice to defraud and deprive the United States of its intangible right to the honest services of Renzi to be performed free from deceit, self-dealing, conflict of interest, and concealment. The object of the scheme was to enrich both Renzi and Sandlin by using the promise of Renzi's exercise of his official authority in their favor to compel Company A and Investment Group B to purchase the Sandlin property. It was also the object of the scheme to conceal Renzi's financial relationship with Sandlin from Company A, Investment Group B, the United States House of Representatives, and the public. The Government charged that for the purpose of executing the scheme and artifice to defraud, Renzi and Sandlin transmitted and caused to be transmitted certain writings, signs, signals and sounds by means of interstate wire as set forth in counts 2 through 10. (SSI ¶ 26-29.)

Counts 6 and 7 involve wire transfers from New York to Arizona of $445,000 and $551,000, respectively, for a legitimate $996,000 loan secured by Sandlin from individuals having no relationship whatsoever to either Sandlin or Renzi, or this case, except that the $996,000 loan was secured by the remainder of the Sandlin property which had not been

---

[1]Defendant Sandlin objects to the R&R finding as moot the Motion to Dismiss the wire fraud charges based on loan proceeds. (Doc. 937.)

sold to Investment Group B. Defendant Renzi argues that wire counts 6 and 7 must be dismissed because "the loan itself was not obtained by fraud, and because the wire transfers in question are not alleged to have contributed to the success of the purported honest service scheme." (Motion to Dismiss Counts 6 & & at 3.)

Defendant correctly notes that where a wire transfer does not itself involve a misrepresentation or other falsehood, the Government must establish that the success or failure of the scheme to defraud is in some sense dependent upon the wire transmission. In other words, the Government must establish that the wire transmissions charged in counts 6 and 7 in some way advanced the scheme to defraud and deprive the United States of its intangible right to the honest services of Defendant Renzi. It is enough if the wire transfers served in some way to conceal or prevent detection of the scheme. (Motion to Dismiss (Doc. 108) at 4-5) (citing *United States v. Maze*, 414 U.S. 395, 399 (1974); *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981); *Schmuck v. United States*, 489 U.S. 705, 715 (1989), *United States v. Henson*, 848 F.2d 1374, 1378 (6th Cir. 1988), *United States v. Altman*, 48 F.3d 96, 102 (2nd Cir. 1995), *United States v. Downs*, 870 F.2d 613, 615 (11th Cir. 1989), *United States v. Wellman*, 830 F.2d 1453, 1461 n. 11 (7th Cir. 1987)).

However, the scheme to defraud need not contemplate the use of the mails or wires as an essential element. *Pereira v. United States*, 347 U.S. 1, 8 (1954). Even use of the wires post-fraud can contribute to the success of a fraudulent scheme by lulling unsuspecting victims into complacency to prolong or perpetuate a scheme. *Schmuck v. United States*, 489 U.S. 705, 717 (1989). It is enough if the wires were used as a part of the scheme or somehow contributed to the success of the scheme. *Id.*, *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981).

The Government submits that the evidence will show the transfer of the New York money into the escrow account contemporaneous with the Sandlin-Renzi payments served as a smoke screen.

On July 6, 2005, Sandlin extended the Sandlin property escrow. (SSI ¶ 25(s)). On September 26, 2005, the loan proceeds were wire transferred into the loan-escrow account

with Pioneer Title Company in Sierra Vista. (Counts 6 and 7.) On September 27, 2005, Sandlin sent escrow instructions to Pioneer Title to payout $533,000 to Patriot Insurance. (Count 8.) On September 30, 2005, Renzi faxed a letter to Pioneer Title Company in Sierra Vista, allegedly dated August 30, addressed to Sandlin which falsely stated a note held by Renzi "for the Kingman property" was being called in as due and payable in full to Patriot Insurance. (SSI ¶ 25(u)). On September 30, Sandlin paid Patriot Insurance $533,000 through a transaction conducted at Pioneer Title in Sierra Vista, and the same day, Defendant Renzi transferred $533,000 from Patriot Insurance into an account opened the same day for Rick Renzi Rain Whisper. (SSI ¶¶ 25(v-w)). On October 7, 2005, Investment Group B transferred $1.6 million to Sandlin along with a $2 million note payable to Sandlin, to complete the purchase of the Sandlin property. (SSI ¶ 25(x)).

The Government argues that Sandlin needed a mechanism to get in excess of $500,000 to Renzi without public scrutiny. The Government argues that the temporal and substantive connection between the New York money and the Sandlin property sale reflects the $966,000 loan was the mechanism by which Defendants created a smokescreen to conceal their fraudulent affairs. At the end of the Government's case, pursuant to Fed. R. Cr. P. 29, the Court may consider whether there is sufficient evidence from which a rational jury could conclude that the success of the fraudulent scheme depended, either directly or indirectly, on use of the wires as alleged in each count, including counts 6 and 7. For now, the Court's legal analysis is limited to the facts alleged in the SSI, which the Court finds sufficiently state honest service wire fraud claims in counts 6 and 7. It remains to be seen at trial whether the Government can support these counts with sufficient evidence.

## CONCLUSION

The Court has reviewed, *de novo*, the issues raised in the Objections filed by the parties, the Responses and the Government's Reply, and the parties' briefs considered by the Magistrate Judge. The Court does not agree with the findings of fact and conclusions of law made by the Magistrate Judge in the R&R for determining the pending Motion to Dismiss Honest Service Charges (Counts 1-10) and, therefore, the Motion to Dismiss Wire Fraud

Charges Based on Loan Proceeds (Counts 6 & 7) is not moot. The Court does not adopt the R&R. The Court denies both motions for the reasons stated above.

**Accordingly,**

**IT IS ORDERED** that after a full and independent review of the record, the Court does not adopt the Magistrate Judge's Report and Recommendation (Doc. 913) .

**IT IS FURTHER ORDERED** the Motion to Dismiss Honest Service Charges (Counts 1-10) (Doc. 109) is DENIED.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Wire Fraud Charges Based on Loan Proceeds (Counts 6 & 7) (Doc. 108) is DENIED.

DATED this 20th day of March, 2012.

David C. Bury
United States District Judge